**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **VENDETTA D. HARDY,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. 4:14-cv-00492** |
| | § | |
| **CATERPILLAR GLOBAL MINING** | § | |
| **EQUIPMENT, LLC,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Now before the Court is Defendant's Motion for Summary Judgment (Dkt. 14). Plaintiff

has filed a response in opposition (Dkt. 23), Defendant has filed a reply (Dkt. 26), and Plaintiff

has filed a surreply (Dkt. 27). Also before the Court is Plaintiff's Motion to Strike Defendant's

Summary Judgment Evidence (Dkt. 24). Defendant has filed a response (Dkt. 28), and Plaintiff

has filed a reply (Dkt. 32). As set forth below, Plaintiff's motion to strike (Dkt. 24) is DENIED,

and Defendant's motion for summary judgment (Dkt. 14) is DENIED.

**FACTUAL BACKGROUND**

Plaintiff Vendetta D. Hardy ("Plaintiff" or "Hardy"), was hired by Bucyrus as a

manufacturing engineer ("ME") at its Denison, Texas facility in April 2011. Dkt. 1 at ¶ 7.

Caterpillar ("Defendant" or "Caterpillar" or "CAT") acquired Bucyrus in July 2011, and

thereafter became successor employer to Bucyrus. *Id*. at ¶ 6. According to Plaintiff, beginning

in July 2011, and throughout her employment, Caterpillar employed approximately 12 MEs at

the Denison facility, retaining the same scheme for job classification as was used at Bucyrus. *Id*.

Plaintiff states that some of the MEs held the title of ME I, most held the title of ME II, and one

held the title of ME III. *Id*. Plaintiff states that she was hired by Bucyrus as a ME II. *Id*. at ¶ 7. Her initial supervisor was Jim Rice ("Rice") until December 2011, and then Tim Pecenka ("Pecenka") until February 2013, and then Matt Sauter ("Sauter") until her termination in August 2013. *Id*. at ¶ 7.

Plaintiff alleges that "[t]hroughout [her] employment with Caterpillar between July 2011 and August 2013, [she] was subjected to race and sex discrimination in that there was disparate treatment between her male white and other non-black ME II peers..." *Id*. at ¶ 20. Plaintiff alleges that she was "misclassified" as an ME I, which was not corrected even after she complained to human resources. Plaintiff also alleges that she was "falsely" informed that Caterpillar was not offering tuition reimbursement toward completion of her master's degree, but she later determined she was eligible for tuition reimbursement. *Id*. at ¶ 8. According to Plaintiff, her "male white and otherwise non-black [ME II] peers were not similarly misclassified or subjected to false statements as to their eligibility for [tuition] benefits." *Id*.

In February 2012, Plaintiff received her "2011 partial year performance evaluation … which accorded her an overall rating of meets expectations." *Id*. at ¶ 9. Plaintiff states she received "only a limited raise and bonus [] for 2012" and that the raise she received was "at the same level provided employees holding the title of ME I, not her male white and otherwise non-black peers holding the title of ME II." *Id*. Plaintiff alleges that she complained again about the misclassification as an ME I. She also contends that in addition to receiving a "minimum raise and bonus" as a result of the alleged misclassification, she also was not "invited to a leadership training workshop in early 2012 afforded to her male white and other non-black peers holding the title of ME II." *Id*. at ¶ 10. In February 2013, Plaintiff received a 2012 performance with an overall rating of "valued performance," also referred to as "a 3C rating." *Id*. at ¶ 11. Plaintiff

received no raise as a result of said 3C rating for 2012. *Id.* at ¶ 12. In both cases, Plaintiff alleges that she deserved more favorable performance evaluation ratings than she actually received. *Id.* at ¶¶ 9-12. Plaintiff further alleges that "[i]n March and April 2013, [she] was assigned an unreasonable number of tasks to perform" and subjected to "disparate assignment of tasks." *Id.* at ¶ 14.

On May 6, 2013, Plaintiff was placed on an action plan, which she contends contemplated a workload that "was unrealistic for a single person." *Id.* at ¶ 15. Plaintiff alleges that Sauter did not inform her that she was not satisfying the terms of the plan and that she was informed that she was meeting the expectations of the plan. *Id.* Although the plan called for regular meetings with Sauter to assess her compliance with the plan, Hardy alleges that Sauter "avoided or minimized" meeting with her. *Id.* Plaintiff also alleges that Sauter did not immediately respond to her complaint about a workplace altercation that occurred on July 29, 2013 where she alleges that "[a male employee] yelled, cursed and lunged at her." *Id.* at ¶ 18. Plaintiff states she had previously complained to Sauter regarding the same individual. *Id.* According to Plaintiff, her employment with Caterpillar was terminated on August 15, 2013, even though she had complied with the action plan. *Id.* at ¶¶ 15-19.

Plaintiff filed suit in this Court on or about July 31, 2014. Plaintiff has alleged race and gender discrimination in violation of Title VII of the Civil Rights Act. Plaintiff has further alleged that she was retaliated against after she complained of one or more acts of discrimination. Plaintiff also raises discrimination claims based on race and gender under Chapter 21 of the Texas Labor Code, § 21.001 et seq., and 42 U.S.C. § 1981("§ 1981"). Chapter 21 of the Texas Labor Code is the primary state discrimination statute and applies to the same protected

categories as Title VII and is governed by the same legal framework.[1]  Plaintiff also brings claims under the Equal Pay Act ("EPA").

Defendant seeks summary judgment of Plaintiff's claims, arguing that: (a) there is no direct evidence of discrimination; and (b) there is no circumstantial evidence of discrimination because Plaintiff cannot show that she was qualified for her position and has not identified any comparator employees; and (c) because Caterpillar has offered a legitimate and non-discriminatory reason for Plaintiff's termination.  *See* Dkt. 14 at 24-29.  Defendant further argues that Plaintiff's retaliation claim should be dismissed because: (a) she did not engage in any protected activity; (b) she has not identified any connection between a protected activity and an adverse employment action; and (c) Caterpillar has offered a legitimate, non-retaliatory reason for Plaintiff's termination.  *See* Dkt. 14 at 29-34.  Finally, with respect to Plaintiff's EPA claim, Defendant argues that any pay differential between Plaintiff and the identified comparators was based on a valid EPA exception and that Plaintiff is unable to show that the offered reasons are pretextual.  *See* Dkt. 14 at 34-38.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when, viewing the evidence and all justifiable inferences in the light most favorable to the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c); *Hunt v. Cromartie*, 526 U.S. 541, 549, 119 S. Ct. 1545, 143 L. Ed.2d 731 (1999).  The appropriate inquiry is "whether the evidence presents a sufficient disagreement to require

---

[1]      *See, e.g., Thompson v. City of Waco, Tex.*, 764 F.3d 500, 503 (5th Cir.2014) (discrimination claim brought under section 1981 is analyzed pursuant to Title VII framework); *Willis v. Cleco Corp.*, 749 F.3d 314, 317 (5th Cir.2014) (retaliation claim brought under section 1981 is analyzed pursuant to Title VII framework); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 n. 10 (5th Cir.2001) (claims brought pursuant to Chapter 21 of the Texas Labor Code are analyzed pursuant to Title VII framework).

Submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed.2d 202 (1986).

The party moving for summary judgment has the initial burden to prove there are no genuine issues of material fact for trial. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). In sustaining this burden, the movant must identify those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S. Ct. 2548, 2553, 91 L. Ed.2d 265 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996).

In response, the nonmovant's motion "may not rest upon mere allegations contained in the pleadings, but must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (citing *Anderson*, 477 U.S. at 255-57, 106 S. Ct. at 2513-14). Once the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record to show that there is a genuine issue for trial. *Stults*, 76 F.3d at 655. The citations to evidence must be specific, as the district court is not required to "scour the record" to determine whether the evidence raises a genuine issue of material fact. E.D. Tex. Local R. CV-56(d). Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Stults*, 76 F.3d at 655.

## EVIDENCE PRESENTED

In support of its motion, Defendant offers the following summary judgment evidence:

1) Oral Deposition Testimony of Plaintiff Vendetta D. Hardy, provided on March 16, 2015;

2) Oral Deposition Testimony of Matthew Sauter, provided on August 4, 2015;

3) Oral Deposition Testimony of Timothy Pecenka, provided on August 4, 2015;

4) Declaration of Patricia Fanning as custodian of records for CAT attaching copies of documents produced by Caterpillar, as follows:

   a) Exhibit A, Receipt and Understanding of Caterpillar's Policies for New Employees/ Rehires/Recalls signed by Vendetta Hardy on August 18, 2011;

   b) Exhibit B, selected pages of CAT's Code of Conduct;

   c) Exhibit C, CAT's Employee Handbook effective December 2011;

   d) Exhibit D, the Denison, Texas CAT facility's EEO policy that are posted at the facility;

   e) Exhibit E, the Denison, Texas CAT facility's complaint policy that is posted at the facility;

   f) Exhibit F, select pages reflecting the anti-harassment, anti-discrimination training conducted by CAT at the Denison, Texas facility;

   g) Exhibit G, Hardy's 2012 annual evaluation;

   h) Exhibit H, incident log kept by Matthew Sauter regarding Hardy;

   i) Exhibit I, a letter that was mailed to Hardy regarding her absences, because CAT was otherwise unable to contact Hardy;

   j) Exhibit J, the action plan that was presented to Ms. Hardy on May 6, 2013;

   k) Exhibit K, Hardy's 2012 Performance Period Merit Award;

5) Oral Deposition Testimony of Patricia A. Fanning, provided on August 5, 2015.

Dkt. 14-1 – 14-7.

In response, Plaintiff submits the following summary judgment evidence:

A) Excerpts from Oral Deposition Testimony of Vendetta D. Hardy, provided on March 16, 2015;

B) Excerpts from Oral Deposition Testimony of Timothy Pecenka, provided on August 4, 2015;

C) Excerpts from Oral Deposition Testimony of Matthew Sauter, provided on August 4, 2015;

D) Excerpts from Oral Deposition Testimony of Patricia A. Fanning, provided on August 5, 2015;

E) Declaration of Robert E. Goodman, Jr., counsel for Plaintiff, attaching copies of documents produced by Defendant, as follows:

   1) Exhibit A: Resumes of Plaintiff, Jeremy White, Jiao Wenjie, and the employment application of Omar Martinez;

   2) Exhibit B: Defendant's EEO-1 for 2012 and 2013;

   3) Exhibit C: Defendant's Code of Conduct;

   4) Exhibit D: Comparative annual salaries of Defendant's manufacturing engineers in 2013;

   5) Exhibit E: Plaintiff's 2011 annual performance review;

   6) Exhibit F: Plaintiff's 2012 annual performance review;

   7) Exhibit G: An email to Plaintiff from Matthew Sauter dated March 28, 2013;

   8) Exhibit H: Caterpillar's Performance Management Process;

   9) Exhibit I: Letter to Plaintiff from "Patti" Fanning dated April 25, 2013;

   10) Exhibit J: Plaintiff's Employee Action Plan dated May 6, 2013;

   11) Exhibit K: Company Property Clearance dated August 15, 2013;

   12) Exhibit L: Untitled Document which appears to contain documentation relating to Plaintiff with first entry on April 15, 2013 and last entry on August 1, 2013;

   13) Exhibit M: Investigation of Complaint from Vendetta Hardy regarding Charles Love;

   14) Exhibit N: Letter from Caterpillar to Texas Workforce Commission regarding Plaintiff's claim for unemployment benefits;

   15) Exhibit O: An email from Nancy Selph to Plaintiff regarding "rotary plan" dated July 25, 2013;

16) Exhibit P: Summary prepared by Vendetta Hardy for Matthew Sauer for purpose of "5/8 One on One meeting for project prioritization per 90 day Action Plan on 5/6/13;

17) Exhibit Q: An email to Vendetta Hardy from Marcos Cabada dated May 13, 2013;

18) Exhibit R: Code of Conduct complaint summarized by "Patti" Fanning dated September 23, 2011;

19) Exhibit S: A report of harassment dated July 11, 2013;

20) Exhibit T: An email from Patricia Fanning to Matthew Sauter dated August 13, 2013;

21) Exhibit U: Plaintiff's 2013 interim performance review;

22) Exhibit V: Plaintiff's employment application to Bucyrus dated April 6, 2011;

23) Exhibit W: Defendant's responses and supplemental responses to Plaintiff's Second Request for Production of Documents;

Dkt. 23-1 – 23-5.

## ANALYSIS

The Fifth Circuit has set forth a specific rubric under which this Court must analyze the summary judgment record in the employment discrimination context. Under the modified *McDonnell Douglas* approach, a plaintiff must demonstrate a *prima facie* case of discrimination. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed.2d 668 (1973); *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *Willis v. Coca Cola Enters., Inc.*, 445 F.3d 413, 420 (5th Cir. 2006). In order to establish a *prima facie* case of race discrimination, a plaintiff must show: (1) he is a member of a protected group; (2) he was qualified for the position; (3) an adverse employment action occurred; and (4) he was treated less favorably because of his membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Wesley v. General Drivers, Warehousemen and Helpers Local*, 745 660 F.3d 211, 213 (5th Cir.

2011). *See also St. Mary's Honor Center*, 509 U.S. 502, 506, 113 S. Ct. 2742, 2747 (1993); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007); *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 281 (5th Cir. 2004).

Once established, the *prima facie* case raises a presumption of discrimination which the defendant must rebut by articulating legitimate, nondiscriminatory reasons for its actions. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S. Ct. 2097, 147 L. Ed.2d 105 (2000); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-56, 101 S. Ct. 1089, 67 L. Ed.2d 207 (1981). The burden on the employer at this stage is one of production, not persuasion and does not involve any assessment of the employer's credibility. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007).

Once the defendant produces evidence of a legitimate, nondiscriminatory reason for the adverse action, "the presumption of discrimination created by the plaintiff's *prima facie* case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination." *Machinchick v. PB Power, Inc.,* 398 F.3d 345, 350 (5th Cir. 2005). Consequently, the burden shifts back to the plaintiff to show that either: (1) the defendant's reason is not true, but is instead designed to serve as pretext for unlawful discrimination; *or* (2) that the defendant's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Id.* at 351-52; *Rachid,* 376 F.3d at 312 (citation omitted). "[T]he plaintiff must rebut each nondiscriminatory or nonretaliatory reason articulated by the employer." *McCoy*, 492 F.3d at 556-57. This same burden-shifting rubric applies to all of Plaintiff's claims.[2]

---

[2] *See, e.g., Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (*citing Pratt v. City of Houston*, 247 F.3d 601, 605 n. 1 (5th Cir. 2001)) (stating that the summary judgment test for assessing

## I.    Plaintiff's Motion to Strike

The Court first addresses Plaintiff's Motion to Strike Certain Portions of Defendant's Summary Judgment Evidence (Dkt. 24). As set forth below, the motion is DENIED.

Plaintiff's motion to strike challenges numerous factual assertions contained in Defendant's summary judgment motion asserting that the information contained in those paragraphs is either unsupported by any summary judgment evidence, relies on inadmissible hearsay testimony or testimony that was taken out of context, or is a mischaracterization of the facts. *See* Dkt. 24 at ¶¶ 3-15. "Although a party's briefs should point the court to competent summary judgment evidence – such as affidavits, depositions or interrogatory responses contained in the party's appendix – in order to support the factual assertions contained in the party's briefs and pleadings, the briefs themselves…are not evidence," *Tucker v. SAS Inst., Inc.*, 462 F. Supp. 2d 715, 723 (N.D. Tex. 2006). Here, as in *Tucker*, Plaintiff's objections are better classified as responsive arguments. *Id.* The Court will consider all the evidence presented to determine whether there is a fact issue and is capable of discerning Defendant's opinion from fact in these summary judgment proceedings. Plaintiff's motion to strike is therefore **DENIED**.

## II.    Discrimination Claim

### *Prima Facie* Case

In order to survive summary judgment, Plaintiff must point to summary judgment evidence which creates a genuine issue of material fact as to a *prima facie* case of discrimination, which, as noted above requires a showing that (1) she is a member of a protected group; (2) she was qualified for the position; (3) an adverse employment action occurred; and (4) she was

---

discrimination claims under § 1981 is the same as it is under Title VII.); *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n. 2 (5th Cir. 1999) ("The law governing claims under [Chapter 21] and Title VII is identical."). *Browning v. Sw. Research Inst.*, 288 F. App'x 170, 173 (5th Cir. 2008) (Plaintiff's EPA claim analyzed using the framework set forth in McDonnell Douglas).

treated less favorably because of her membership in that protected class than were other similarly situated employees who were not members of the protected class, under nearly identical circumstances. *Wesley v. General Drivers, Warehousemen & Helpers Local*, 660 F.3d 211, 213 (5th Cir. 2011). *See also McCoy*, 492 F.3d at 556; *Pegram*, 361 F.3d at 281.

The first and third elements of Plaintiff's *prima facie* case – that she is a member of a protected class and suffered an adverse employment action – are not disputed by Defendant. *See* Dkt. 14 at 24-25. Thus, the Court's summary judgment analysis of Plaintiff's discrimination claim focuses on whether she was qualified for the position of manufacturing engineer and whether she was replaced by someone not in a protected group or treated less favorably.

*Qualification for the Position*

Defendant argues that Plaintiff did not meet her *prima facie* burden because "she was not qualified due to poor job performance." Dkt. 14 at 25. Defendant asserts that Plaintiff had "numerous issues regarding attendance, performance and working with others, and was the subject of complaints by many co-workers throughout her employment with CAT." *Id*. "For 2012 Hardy received the lowest annual performance rating of any ME at the facility." *Id*. "In 2013 CAT placed Hardy on an action plan based on her continuing attendance, performance and communication issues, and CAT ultimately terminated because she failed to comply with the action plan and was unable to perform her job adequately." *Id*.

Plaintiff argues that Defendant's assertion of performance issues is not enough to defeat her *prima facie* case and contends that there exist genuine issues of material fact with regard to Defendant's characterizations of Plaintiff's performance and thus her qualification for the position. Dkt. 23 at 22-23. Plaintiff argues, *inter alia*, that much of Defendant's evidence regarding Plaintiff's performance is inadmissible, and even if admissible, can be readily

disputed.  *Id.*  Defendant cites no specific evidence in the record to support the proposition that Plaintiff's poor performance rendered her unqualified for the position, but even if the Court were to rely on other portions of the record to support that contention, there is sufficient evidence to create a fact issue.

With regard to Plaintiff's "attendance issues," Pecenka (Plaintiff's supervisor from December 2011 to February 2013) testified that Plaintiff's absences were not to the level where he issued an action plan or noted the issue in Plaintiff's performance review.  Dkt. 14-3 at 28. Sauter (her supervisor from February 2013 until her termination on August 15, 2013) testified that Plaintiff did not have attendance and availability issues prior to April 15, 2013.  *See* Dkt. 14 at 14-15; Dkt. 14-1 at 39.   Although the record indicates that Plaintiff had some absences in April 2013, it appears to show that at least some of these were "acceptable" or "excused."  *See* Dkt. 23-3 at 16; Dkt. 23-4 at 5.  There is also a fact issue as to whether Plaintiff's attendance was considered deficient from the initiation of the action plan in May 2013 until the time of her termination in August 2013.  *See* Dkt. 23-4 at 4.   Although another identified "attendance issue" seems to involve Plaintiff's lack of availability to the production line or her absence from various required meetings, this also raises a fact issue.  *See, e.g.*, Dkt. 23-4 at 2; Dkt. 23-3 at 17-21.

Plaintiff further argues that the burden of proving her qualification for the position is not a significant burden (*see* Dkt. 23 at 22), and the *prima facie* requirements involve only "a very minimal showing."  *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 41 (5th Cir. 1996); *see also Taylor v. Cty. Bancshares, Inc.*, 325 F. Supp. 2d 755, 769 (E.D. Tex. 2004) (citing *Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1505–06 (5th Cir.1988)).   A *prima facie* case is established once a plaintiff demonstrates that objective employment qualifications have been met.  *Taylor*, 325 F. Supp. 2d at 769-70 (citing *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 681

(5th Cir.2001)). Qualifications for a job refer to objective factors, such as degrees, certificates, skills and experience; subjective criteria are not considered in the determination of basic qualifications for a job. *Taylor*, 325 F. Supp. 2d at 769-70; *see also Bienkowski*, 851 F.2d at 1505; *Medina*, 238 F.3d at 681; *Lindsey v. Prive Corp.*, 987 F.2d 324, 327 (5th Cir. 1993) (subjective performance criteria may serve legitimate functions, but they also provide opportunities for unlawful discrimination). "[Defendant's] evidence [of Plaintiff's performance issues] is not of such magnitude that a reasonable jury could *only* find in their favor." *Laxton v. Gap Inc.*, 333 F.3d 572, 585-86 (5th Cir. 2003) (quoting *Russell v. McKinney Hospital Venture*, 235 F.3d 219, 225 (5th Cir. 2000)). There is sufficient evidence and argument before the Court to show that there is a genuine dispute as to Plaintiff's qualification for the position, and the Court declines to find that she is not qualified for purposes of her *prima facie* case.

*Less Favorable Treatment*

Defendant has argued that Plaintiff cannot identify any similarly-situated person who was not a member of the protected class who was treated differently. Dkt. 14 at 25. According to Defendant, Plaintiff can show no evidence that her peers had similar attendance or performance problems that ultimately resulted in them being placed on an action plan and then failing to meet the goals outlined in the action plan. *Id.*

The disparate treatment element may be satisfied by proof that Plaintiff was either replaced by someone outside the protected class or other proof that an employee was treated less favorably than other similarly situated employees outside the protected group. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507, 113 S. Ct. 2742, 2747, 125 L. Ed. 2d 407 (1993); *McCoy*, 492 F.3d at 556; *Pegram*, 361 F.3d at 281. Plaintiff contends that she "was succeeded by one or more of three new male MEs and so was replaced by someone outside her protected class." *Id.*

at 25; *See* Dkt. 23-4 at 9. There is evidence that Defendant had "three temporary or agency MEs" but didn't know if they were actually hired and was not sure of their race. Dkt. 26 at 6-7; *See* Dkt. 23-4 at 9. Defendant argues that evidence this does not show that Plaintiff was replaced by a person outside the protected class. The Court finds that this uncertainty regarding whether or not Plaintiff was replaced by someone outside the protected class presents a genuine issue of material fact.

Plaintiff also challenges Defendant's claim that Plaintiff was a poor performer and her peers were not, contending that she was subjected to "disparate treatment" in the form of "disparate monitoring, disparate demands, disparate discipline, disparate evaluation and disparate pay." Dkt. 23 at 24-25. As the Southern District of Texas has noted "[a] plaintiff can fulfill the fourth element if she proves that she suffered an adverse employment action under circumstances in which an employee of a different race would not have suffered that action, irrespective of the race of her eventual replacement, if there is one." *Hill v. New Alenco Windows, Ltd.*, 716 F. Supp.2d 582, 595-96 (S.D. Tex. 2009); *see also EEOC v. Brown & Root, Inc.*, 688 F.2d 338, 340-341 (1982). Here, the Court finds that there is evidence sufficient to create a fact issue as to whether Plaintiff was placed on an action plan when an employee of a different race would not have been placed on an action plan, or was terminated under circumstances in which an employee of a different race would not have been terminated. *See, e.g.*, Dkt. 23-3 at 6-7, 16: Dkt. 23-4 at 1, 3-4. Therefore, the Court finds that Plaintiff has sustained her burden in demonstrating a genuine issue of material fact as to whether she received less favorable treatment and will not grant summary judgment on that ground.

### Non-Discriminatory Reason

With Plaintiff's burden satisfied, the burden now shifts to Defendant to show that Caterpillar had a legitimate reason for termination. Defendant's burden at this phase is only one of production, not persuasion. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The Court finds that there is sufficient evidence in the summary judgment record to create a fact issue as to Defendant's claim that Plaintiff was terminated for performance issues and failure to meet the goals in her action plan. *See* Dkt. 23-3 at 6-7, 16-2; Dkt. 23-4 at 1, 3-5; Dkt. 14-1 at 39.

### Pretext

With Defendant's burden established, the Court must now turn back to Plaintiff to determine whether the reasons given are pretextual. "A plaintiff may establish pretext either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Laxton*, 333 F.3d at 578 (internal citations and quotations omitted). Having reviewed the summary judgment record here, the Court finds that Plaintiff has identified evidence that creates a genuine issue of material fact as to whether Defendant's proffered reason was "the real reason for the adverse employment action." *Id.*; See, e.g., Dkt. 23-3 at 6-7, 16-2; Dkt. 23-4 at 1, 3-5; Dkt. 14-1 at 39.

The Court finds that there is also a fact issue as to whether Plaintiff's alleged performance issues were the true reasons for her termination or whether Defendant's "subjective performance criteria" may have been applied so as to "provide cover for unlawful discrimination." *Lindsey*, 987 F.2d at 328. As explained above, there is a fact issue as to Plaintiff's attendance and other performance issues. Although Defendant argues that Plaintiff began having issues shortly after she joined Caterpillar in 2011[3], attendance issues were not

---

[3]     As noted previously, Plaintiff was hired by Bucyrus in April 2011 and joined Caterpillar when it acquired Bucyrus in July 2011. *See* Dkt. 14 at 9; Dkt. 1 at ¶ 7.

documented in an action plan or noted in Plaintiff's performance review until the employee action plan initiated on May 6, 2012 (*see* Dkt. 23-5 at 90), the plan which ultimately became the basis for her termination on August 15, 2013. *See* Dkt. 14-3 at 28; Dkt.14 at 14-15; Dkt. 14-1 at 39. The action plan focused on attendance, performance of various specific tasks, and working with others. *See* Dkt. 23-5 at 90. There is also a fact issue regarding Plaintiff's performance ratings. According to Defendant, in 2012 Plaintiff "received the lowest rating of any ME at the facility." Dkt. 14 at 12. Plaintiff describes Plaintiff's rating of "3C" as "the lowest tier of 'valued performance.'" *Id.* However, the performance summary seems to reflect an overall positive performance review and does not appear to indicate that Plaintiff had performance issues. *See* Dkt. 23-5 at 54-61.

The Court further finds that fact issues exist as to whether Plaintiff had performance issues related to teamwork, working well with others, and alleged personality conflicts, and whether those issues justified Plaintiff's termination subject to the May 6, 2013 employee action plan. *See, e.g.*, Dkt. 14 at 17; Dkt. 233-2 at 7-8; Dkt. 23-5 at 53, 61. Given the fact issues regarding whether Plaintiff's performance issues justified her termination or whether the Defendant's proffered reason was pretextual, the Court finds that Defendant's allegations of performance issues cannot defeat a finding of a *prima facie* case or pretext. These issues are best decided by the ultimate trier-of-fact, not on summary judgment.

Plaintiff has presented sufficient material summary judgment evidence of a *prima facie* case of discrimination and pretext to prevent the grant of summary judgment. That claim shall proceed to trial.

### III.  Retaliation Claim

The *McDonnell Douglas* framework also applies to Title VII retaliation cases when a plaintiff has presented only circumstantial evidence of retaliatory animus.  *Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001) (citing *Portis v. First Nat'l Bank*, 34 F.3d 325, 328 (5th Cir.1994)).  Because there is no direct evidence that Plaintiff was terminated for retaliatory reasons, the Court will apply the *McDonnell Douglas* rubric to Plaintiff's retaliation claim.

To prove a *prima facie* case of retaliation, Plaintiff must demonstrate: (1) that she engaged in a protected activity; (2) experienced an adverse employment action following the protected activity; and (3) a causal link existed between the protected activity and the adverse employment action.  *Montemayor*, 276 F.3d at 692 (citing *Mota v. Univ, of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001)).  The Fifth Circuit has defined protected activity as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceedings, or hearing under Title VII."  *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 839 (5th Cir. 2010) (internal citations and quotations omitted).  If the plaintiff carries his initial burden, the employer must respond by producing evidence of a "legitimate, nondiscriminatory reason" for the adverse employment action. *Id*.  Finally, if the employer carries its burden, the plaintiff must put forward evidence that "the legitimate reasons offered by the employer were not its true reasons, but were a pretext for discrimination." *Id*.

#### ***Prima Facie* Case**

Defendant first argues that Plaintiff's *prima facie* case fails because she never engaged in any protected activity.  Dkt. 14 at 30.  Citing *Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485

(5th Cir. 2011), Defendant argues that internal complaints must reference employment discrimination to constitute a protected activity for purposes of retaliation claims. *See* Dkt. 14 at 32. According to Defendant, Plaintiff could not identify a single occasion where *she reported* that she believed her treatment was a result of discrimination. *Id.* (emphasis added). Defendant's primary argument on this point is based on the fact that Plaintiff did not formally report her complaints according to the reporting procedures in Caterpillar's Code of Conduct and Employee Handbook. Defendant also takes issue with the fact that Plaintiff could not provide specific dates and other details regarding her complaints. *See, e.g.,* Dkt. 14 at 10, 31; Dkt. 14-1 at 29-35. Plaintiff directs the Court's attention to evidence in the record showing that she complained of "double standards,", that she was "treated differently," that she was "challenged" by co-workers, that people were treated differently based on "certain groups, and that she was subjected to harassment, bullying, and a hostile work environment. *See* Dkt. 14-1 at 29-35. Plaintiff also complained of an altercation with a male employee in July 2013, shortly before her termination. *See* Dkt. 23-5 at 100. The Court thus finds that there is a genuine issue of material fact regarding whether Plaintiff's complaints constituted protected activity.

As to the next element of her *prima facie* case, it is undisputed that Plaintiff was subjected to an adverse employment action. However, Defendant argues that there was no causal connection between Plaintiff's protected conduct and her termination. Dkt. 14 at 32-33. Defendant relies primarily on *Septimus v. Univ. of Houston*, 399 F.3d 601, 604 (5th Cir. 2005), to support its argument that Plaintiff must demonstrate "but for" causation to meet her *prima facie* burden. Dkt. 14 at 32-33. However, in *Septimus* the issue before the court was the proper evidentiary framework for the plaintiff's burden to demonstrate pretext, not to make out her *prima facie* case. *See Septimus*, 399 F.3d at 607-08. "[W]here the defendant has proffered a

nondiscriminatory purpose for the adverse employment action the plaintiff has the burden of proving that 'but for' the discriminatory purpose he would not have been terminated." *Id.* (internal citations and quotations omitted). *Septimus* thus does not support Defendant's argument that Plaintiff must show "but for" causation at the *prima facie* stage. *See also Montemayor*, 276 F.3d at 692 ("Because the causation showing at the *prima facie* stage is much less stringent than a "but for" standard, [plaintiff] arguably made out a *prima facie* case.). Given evidence in the record showing that Plaintiff complained of double standards and different treatment, that she was subjected to harassment, and a hostile work environment, and that she also complained of an altercation with a male employee in July 2013, shortly before her termination (*see* Dkt. 14-1 at 29-35; Dkt. 23-5 at 100), Plaintiff has arguably made out a *prima facie* case.

### Non-Retaliatory Reason and Pretext

The Court has already determined that there is sufficient evidence in the summary judgment record to create a fact issue as to Defendant's claim that Plaintiff was terminated for performance issues. Furthermore, the Court cannot say that a reasonable jury would not find a causal connection between Plaintiff's complaints and the adverse employment event. Therefore, Defendant's allegations of performance issues cannot defeat a finding of a *prima facie* case or pretext. These issues are best decided by the ultimate trier-of-fact, not on summary judgment. The Court thus finds that Plaintiff has presented a *prima facie* case for unlawful retaliation.

## IV. Equal Pay Act

The *McDonnell Douglas* burden-shifting framework is also applicable to Plaintiff's EPA claim. To establish a *prima facie* case claim under the equal pay act, a plaintiff must show: 1) the defendant is an employer that is subject to the Equal Pay Act; 2) the plaintiff worked in a

position requiring equal skill, effort, and responsibility under similar working conditions; and 3) that the defendant paid the plaintiff less than the employee of the opposite sex providing the basis for the comparison. *Chance v. Rice University*, 984 F.2d 151, 153 (5th Cir. 1993). The burden then shifts to the defendant to show one of four accepted grounds for such a disparity: 1) a seniority system; 2) a merit system; 3) earning based on quantity or quality of work; or 4) factors other than sex. *Siler-Khodr v. University of Texas Health Science Center San Antonio*, 261 F.3d 542, 546 (5th Cir. 2001). If the defendant establishes any of these grounds, the plaintiff then must show that the grounds offered is simply a pretext for sex discrimination. *Phillips v. TXU Corp.*, 194 Fed.App'x. 221, 224 (5th Cir.2006).

Claims under the EPA must also be commenced within two years unless the violation is willful; then the time limit extends to three years. 29 U.S.C. § 255(a). A willful violation includes one due to the "reckless disregard" of the employer. *See Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1138 (5th Cir.1988). Defendant asserts that Plaintiff's EPA claim is subject to the two-year statute of limitation and, therefore, only concerns wages earned between July 31, 2012, the date two years prior to the filing of her lawsuit, and August 31, 2013, the date of her termination. Dkt. 14 at 35. Plaintiff does not appear to contest this argument, so the Court's analysis will proceed on that basis.

Defendant alleges that Plaintiff's EPA claim fails because she earned more than some of her male peers. Dkt. 14 at 36-38. However, Defendant does not dispute that Plaintiff was paid less than three of her male peers. *Id*. at 35-36. Defendant asserts that those comparators earning more than Plaintiff can be attributed to their earlier start dates (seniority) or their higher performance ratings (merit). Plaintiff responds that Defendant's motion for summary judgment fails to make out these defenses within the meaning of the EPA. Dkt. 23 at 29-31. Plaintiff also

20

argues that it is the Defendant who must carry the burden of showing that the pay disparity falls into one of the exceptions. *Id.* The Court agrees. "The [EPA] exceptions are affirmative defenses on which the employer has the burden both of production and of persuasion." *Plemer v. Parsons-Gilbane*, 713 F.2d 1127, 1136 (5th Cir. 1983) (citing *Corning Glass Works v. Brennan*, 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1, 11 (1974). The burden of persuasion remains with the plaintiff in a Title VII case, but in an EPA case the defendant has the burden of persuasion if the plaintiff establishes a *prima facie* case. *Plemer*, 713 F.2d at 1136. Here, Plaintiff has established her *prima facie* case, so the burden shifts to Caterpillar to show that the salary disparity fell within one of the EPA exceptions. Merely attributing the disparity to the fact that some comparators had earlier start dates than Hardy, or had higher performance ratings, does not prove that Caterpillar had an actual system of basing pay on either seniority or merit. Furthermore, with regard to Defendant's performance ratings and accompanying merit raises, the Court finds that the same fact issues discussed above – that subjective performance criteria may have been selectively applied in a discriminatory manner – also create a genuine dispute here. Therefore, the Court finds that Plaintiff has presented sufficient evidence and argument to raise a genuine dispute as to material facts regarding her EPA claims.

## CONCLUSION

For these reasons Defendant's Motion for Summary Judgment (Dkt. 14) is **DENIED** and Plaintiff's claims shall proceed to trial.

**SO ORDERED**.

**SIGNED this 18th day of February, 2016.**

_____
DON D. BUSH
UNITED STATES MAGISTRATE JUDGE